Floyd NORTON, Arnold Pedersen, Robert Lee Remmick, and Steve Neiffer, on behalf of themselves and all other employees and former employees of Worthen Van Service, Inc. similarly situated, Plaintiffs–Appellants,

v.

WORTHEN VAN SERVICE, INC., a Wyoming corporation, Defendant–Appellee.

No. 86–1415.

United States Court of Appeals, Tenth Circuit.

Feb. 17, 1988.

Jay C. Shultz (Gregory A. Eiesland with him, on the briefs), of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D., for plaintiffs-appellants.

David R. Gorsuch (Jane D. Smith with him, on the brief), of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for defendant-appellee.

Before MOORE and ANDERSON, Circuit Judges, and PHILLIPS, District Judge.*

JOHN P. MOORE, Circuit Judge.

This is an appeal from the district court's judgment dismissing plaintiffs' claim for back wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (FLSA). Plaintiffs Floyd Norton, Robert Remmick,

---

* Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation.

and Steve Neiffer, argue on behalf of fifty-two current and former Worthen Van employees that the district court incorrectly decided time spent waiting on call did not constitute working time under the FLSA. Plaintiffs contend that waiting to be called was an integral part of their job because during this period they had to be immediately available to work and therefore could not pursue personal matters. While we sympathize with plaintiffs' claim, we affirm the district court's judgment that Worthen Van employees should not be compensated for being on call.

## I.

The facts are not in dispute. Worthen Van operates a van service throughout Wyoming and adjoining states transporting railroad crews to and from their trains. When the railroad needs a crew transported, a dispatcher telephones a driver who is responsible for quickly arriving at the Worthen Van facility. Drivers generally work shifts of eight to twelve hours a day. During these shifts, drivers must be near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes. However, drivers are compensated for this waiting time only if they receive a call to transport railroad crews within two hours of their last call. If a driver fails to promptly respond to a dispatcher's call, he is disciplined by the company. A driver may be fired if he is disciplined three times.

In February 1985, plaintiffs brought suit seeking back wages, overtime compensation, and liquidated damages. The trial court ruled that plaintiffs were entitled to be paid for time spent cleaning and inspecting vans but denied recovery because it found only the minimum wage provisions of FLSA applied to Worthen Van, and its employees had been paid at least a minimum wage for each week they had worked.

The court also found that Worthen Van was exempt from paying overtime wages under the motor carrier exemption, 29 U.S.C. § 213(b)(1). Neither issue is before us on appeal. Finally, the trial court denied recovery of unpaid wages for waiting time. The court emphasized that time spent on call was primarily used for the benefit of the employees, since employees could leave the employer's premises and pursue personal matters which did not interfere with their ability to quickly return to work.

## II.

Plaintiffs argue that this final finding by the trial court is clearly erroneous and urge us to decide that waiting while on call constitutes an integral part of their job. The employees argue that the unpredictability of assignments and the short response time which they are allowed preclude their using this waiting period for their own purposes.[1] Rather, they argue, the period between assignments is predominantly for Worthen Van's benefit, and employees should therefore receive compensation for the time they spend waiting. Plaintiffs also argue that Worthen Van strongly encourages drivers on call to remain at work between runs. Because of this policy, according to the plaintiffs, drivers have waited on or very near the Worthen Van premises for up to seven hours without getting paid.

Whether periods of waiting for work should be compensable under the FLSA is to be determined by the facts and circumstances of each case. The FLSA simply defines "employ" as "to suffer or permit to work," and does not further define the relevant terms. 29 U.S.C. § 203(g). Case law has focused on how close an on-call employee must remain to the employer's premises or a work-related vehicle to be

---

**1.** As the plaintiffs note in their brief:

There are a host of personal, private pursuits that cannot be accomplished due to the strict mandate that on-call drivers be available at a moment's notice to respond to a call. For example, a driver who is waiting on call is effectively precluded from holding another job.... He is unable to take his children to the park to play, or to work on his car for fear he may not hear the phone, or to work on his car and otherwise be unable to drive it anywhere.... An "on call" driver furthermore cannot safely invite people over to his house for dinner or to play cards, for example, because he must be available, on short notice.

considered working. In *Armour v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), plaintiffs had to remain on call on the employer's premises for fifteen hours after their regular shifts as auxiliary firemen. The Supreme Court affirmed a lower court holding that the time spent eating and sleeping did not constitute work time, but that all waiting or on-call time should be compensated under the FLSA because "time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." *Id.* at 133, 65 S.Ct. at 168. That same day, the Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), awarded compensation to auxiliary firemen for their on-call shifts, during which they had to remain on or very near the employer's premises. According to the Court, resolution of the matter involved determining the degree to which the employee could engage in personal activity while subject to being called. "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Id.* at 137, 65 S.Ct. at 163.[2]

The progeny of *Armour* and *Skidmore* further elucidate when waiting to work should be compensable. In *Allen v. United States*, 1 Cl.Ct. 649 (1983), *aff'd*, 723 F.2d 69 (Fed.Cir.1983), the court determined that federal marshals should not receive compensation under the FLSA for being on call after their regular work day. In reaching this conclusion, the court emphasized that on-call federal marshals were free to pursue their individual pursuits subject only to the requirement that they remain sober and within range of their elec-tronic beepers. Similarly, in *Pilkenton v. Appalachian Regional Hosps., Inc.*, 336 F.Supp. 334 (W.D.Va.1971), the court held that plaintiff laboratory technicians should not receive compensation for being on call because their freedom during these periods was circumscribed only by the requirements that they leave a phone number and arrive at the hospital within twenty minutes of receiving the call. *See also Kelly v. Ballard*, 298 F.Supp. 1301 (S.D.Cal.1969) (awarded overtime for the period during which ambulance drivers were on call and required to remain at their station or by their ambulances).[3]

These opinions indicate that plaintiffs should not recover for the time they are on call. The firemen in *Armour* had to remain on the employer's premises, and in *Skidmore*, plaintiffs only had the choice of remaining in the firehall or staying within immediate hailing distance. Subsequent case law follows *Armour* and *Skidmore* by compensating employees who are required to remain either on the employer's premises, in the immediate vicinity, or by a work-related vehicle. The Van Worthen employees, on the other hand, have more of an opportunity to pursue personal business between assignments, even if being on call does limit their activity. Testimony showed that drivers spent their time between assignments at the homes of friends, at church, at laundromats, at restaurants, at pool halls, and at a local gymnasium. Several plaintiffs testified that they pursued hobbies, such as working on guns or physical fitness, while waiting to be called by a dispatcher. Furthermore, a simple paging device, which the drivers are free to

---

**2.** These two cases are factually similar to *Handler v. Thrasher*, 191 F.2d 120 (10th Cir.1951), in which we granted overtime compensation to an oil pumper who was required to be on call at his employer's oil field. The court specified that although the employee was probably not continually engaged in physical labor while on call, he had to be on the premises and ready to perform any function necessary to keep the wells pumping.

**3.** The principles set forth in these cases have been summarized in the various rules promulgated by the Administrator, Wage and Hour Division, United States Department of Labor. Of these rules, which are not controlling on the courts but may be used for guidance, the most relevant states:

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17 (1985).

purchase and to use, would have allayed the necessity of remaining by a phone.

We also believe Worthen Van made a significant effort to allow its drivers to use their waiting time effectively. Although on several occasions drivers were told by dispatchers to wait at the employer's premises, in each instance the head dispatcher sat down with the driver and the ordering dispatcher and reiterated the "Worthen Van policy" that on-call drivers may wait anywhere so long as they can be reached. Drivers also had the option to "go unavailable" for a certain period of time during which they would not be called, or to drop to the bottom of the driving list, making it far more unlikely they would be called.

Even though a condition of the plaintiffs' employment required a restriction on their personal activities, we believe the trial court correctly concluded this restriction did not constitute working time. Accordingly, the judgment of the district court is AFFIRMED.