**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1467
_____

SANDRA J. BABCOCK; JAMES T. KENAAN, Jr.:
BRADLEY J. SARVEY; DALE R. LIPAN; SHAWN J.
KELLY; SAMANTHA PISTORIUS;
ANTHONY BLUMLING; RANDAL K. CYPHER; CHAD
NEIGH; TORY A. COYLE; JOSEPH HANCHOSKY;
DARREN M. KNOX; TODD WALKER; MICHAEL
EMERY; KEVIN POLLACK; RAY SLATER; MICHAEL J.
SHULER; TRAVIS MACULSKI; LEN THORNLEY;
JASON PRY; ROBERT D. SEATONL BRUCE W. FAIR;
LISA VASEY; MICHAEL A. GRAHAM; JOAN MUIR;
MATTHEW L. EDGAR; CHRISTOPHER A. FORINGER;
DAVID L. NADING;  JAMES W. WGANER; EVAN R.
LONG; JUSTIN F. KRILEY; KELLY J. BUNDY;
RICHARD ZENTZ, Jr.; SHAUN A. SMITH; RANDY S.
RUSSELL; RYAN REKICH; DAVID C. SUMMERVILLE;
DESMOND FORINGER; AARON C. SLOBADA;
KRISTOPHER M. STEIGHNER; MISTY D. HOGAN;
DAVID K. WINTERS; BEAU SNEDDON; BRANDON
COUSINS; FRANCIS WALTERS; LISA MARIE
ZALUDEK; COREY RICHARD HELFRICH;
LANCE NEIGH; MARLENE STINE; QUINTIN GREY;
TRAVIS TRIMBUR; WILLIAM HILE, JR.; JOHN
STOJKA; CHRISTPHER HASKINS; DAWN MAIER;
MARK BOWAN; MATTHEW WAGNER; MARK

GUTSHALL; PATRICK CARLSON; MICHAEL TEXTER;
MICHAEL HASYCHAK; MICHAEL DORONDO; DAVID
CHRISTIE; MARK BISHOP, CHRISTOPHER REEVES;
MARK GROSSMAN; RYAN MCCANDLESS;
SPENCER CROUSE; MARK ALLEN BODKIN; REBECCA
RITZERT; ROGER FEDOKOVITZ; JEFFREY BAILEY;
SCOTT LEWIS, Individually an on behalf of all those
similarily situated,
                                        Appellants

v.

BUTLER COUNTY; JOHN DOES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-12-cv-00394)
District Judge:  Honorable Arthur J. Schwab
_____

Argued: May 19, 2015
Before: FUENTES, GREENAWAY, JR., and SLOVITER,
*Circuit Judges.*

(Opinion Filed: November 24, 2015)

Justin L. Swidler, Esq.     **[Argued]**
Swartz Swidler
1101 Kings Highway North
Suite 402
Cherry Hill, NJ  08034
	*Attorney for Appellant*

Marie M. Jones, Esq.     **[Argued]**
Michael R. Lettrich, Esq.
Jones Passodelis
707 Grant Street
Suite 3510, Gulf Tower
Pittsburgh, PA  15219
	*Attorney for Appellees*

———————————

OPINION OF THE COURT

———————————

SLOVITER, *Circuit Judge*.

This putative class action was initiated by Sandra Babcock, a corrections officer at the Butler County Prison in Butler, Pennsylvania.  Babcock claims that Butler County failed to properly compensate her and those similarly situated for overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209, *et seq*.  The FLSA requires an employee who works "a workweek longer than forty hours" to be paid at least one and one-half times the

3

employee's regular rate for the work performed over forty hours.  29 U.S.C. § 207(a)(1).

This appeal raises the issue of whether a portion of time for the Butler County Prison corrections officers' meal periods is compensable under the FLSA.[1]  There is no provision of the FLSA that directly addresses this issue.  Two tests have been suggested by other courts of appeal: one looks to whether the employee has been relieved from all duties during the mealtime; the other, more generally adopted, looks to the party to which the "predominant benefit" of the mealtime belongs.  The District Court noted that this Circuit has not yet established a test to determine whether a meal period is compensable under the FLSA.  For the reasons set forth below, this Court will adopt the predominant benefit test and affirm the District Court.

I.

Many of the relevant facts are not disputed.  A collective bargaining agreement ("CBA") between Butler County and the employees who work at the Butler County Prison provides that corrections officers work eight and one-quarter hour shifts that include a one hour meal period, of which forty-five minutes are paid and fifteen minutes are unpaid.[2]  It is the

---

[1] There is a special provision in the FLSA that covers employees engaged in fire protection or law enforcement activities, 29 U.S.C. § 207(k), but none of the parties to this case has suggested it has any applicability here.

[2] Plaintiffs produced the CBA in this case and made it part of the record.  Accordingly, the CBA was appropriately considered on the Rule 12(b)(6) motion below, and is appropriately considered on this appeal.  *See Pension Ben.*

lack of compensation for that fifteen minutes that is the subject of this action. During the meal period, the corrections officers may not leave the prison without permission from the warden or deputy warden, and they must remain in uniform, in close proximity to emergency response equipment, and on call to respond to emergencies. Plaintiffs claim that as a result of this meal period policy, the officers cannot run personal errands, sleep, breathe fresh air, or smoke cigarettes during mealtime, and if an emergency or unexpected situation arises, the officers must respond immediately in person, in uniform, and with appropriate response equipment. Plaintiffs allege that because of these restrictions, they should be compensated for the full hour.

Butler County filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the corrections officers' meal periods were not compensable work because the officers received the "predominant benefit" of the meal period.[3] The District Court agreed and dismissed the complaint. Plaintiffs do not dispute the appropriateness of applying the predominant benefit test. Rather, they argue that their pleadings establish a plausible claim for relief under

_Guar. Corp. v. White Consol. Indus., Inc._, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] A Rule 12(b)(6) "motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" _Simon v. FIA Card Servs., N.A._, 732 F.3d 259, 264 (3d Cir. 2013) (quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 554, 558 (2007)).

either the predominant benefit test or the relieved from all duties test.

II.

The predominant benefit tests asks "whether the officer is primarily engaged in work-related duties during meal periods."[4] The majority of the courts of appeals have adopted this test. *See, e.g.*, *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 61 (2d Cir. 1997); *Roy v. Cty. of Lexington*, 141 F.3d 533, 544-45 (4th Cir. 1998); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264-65 (5th Cir. 1998); *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984); *Alexander v. City of Chicago*, 994 F.2d 333, 335 (7th Cir. 1993); *Henson v. Pulaski Cty. Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993); *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992); *Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994). Plaintiffs cite only two cases that purportedly apply the relieved from all duties test: *Kohlheim v. Glynn County*[5] and *Busk v. Integrity Staffing Solutions, Inc.*[6] The court in neither case, however, actually applied that test. Instead, the Eleventh Circuit in *Kohlheim* applied its version of the predominant benefit test. 915 F.2d at 1477 ("The firefighters are subject to real limitations on their freedom during mealtime which inure to the benefit of the county; accordingly, the three mealtime periods are compensable under FLSA regulations for overtime purposes."). In *Busk*, the Ninth Circuit identified the two

---

[4] *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992) (internal quotation and citation omitted).

[5] 915 F.2d 1473 (11th Cir. 1990).

[6] 713 F.3d 525 (9th Cir. 2013), *rev'd*, 135 S. Ct. 513 (2014).

tests but explained that "[t]he distinction between the 'completely relieved from duty' and 'predominant benefit' standards d[id] not matter for th[at] case, which turn[ed] on whether the activities at issue [we]re compensable 'work.'" 713 F.3d at 531 n.4.  The Supreme Court reversed the Ninth Circuit's decision in *Busk* and focused the analysis on "work" as defined by the Portal-to-Portal Act.  135 S. Ct. 513.   In any event, the predominant benefit test is uncontroversial in the case before us—neither party disputes that it is the appropriate standard.  Accordingly, we join our sister Circuits in adopting the predominant benefit test.

Courts have generally eschewed a literal reading of a Department of Labor regulation that provides that during a "bona fide meal period"

> [t]he employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a).[7]  Instead, courts have assessed the totality of the circumstances to determine, on a case-by-case basis, to whom the benefit of the meal period inures.  Most courts derive this approach from Supreme Court precedent holding that "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944), *superseded on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, codified at 29 U.S.C. §§ 251-262.

Thus, the predominant benefit test is necessarily a fact-intensive inquiry.  For some courts, whether the employee is free to leave the premises is of particular importance.  Others emphasize the number of interruptions to which the employees are subject.  As the Eleventh Circuit has stated, "the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal." *Kohlheim*, 915 F.2d at 1477.

Here, although Plaintiffs face a number of restrictions during their meal period, the District Court correctly found that, on balance, these restrictions did not predominantly benefit the

---

[7] In evaluating the effect of these regulations, it is significant to keep in mind that the Supreme Court has commented that interpretive regulations issued by the Secretary of the Department of Labor under the FLSA do not have the force of law; the regulations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

8

employer. In comparison to the cadre of case law addressing mealtime compensability in the law enforcement context, the allegations in Plaintiffs' complaint do not suffice. For example, the corrections officers here could request authorization to leave the prison for their meal period and could eat lunch away from their desks. In *Alexander v. City of Chicago*, in contrast, police officers were required to receive permission to take a meal period and were not permitted to read "nondepartmental publications."[8]

Another factor to consider is the existence of the CBA. We find helpful the decision of the Seventh Circuit in *Leahy v. City of Chicago*, a case initiated by Chicago police officers seeking overtime pay.[9] The Seventh Circuit, like in the case before us, had before it a CBA between the employees and the employer. In that case, the City of Chicago faced an action brought by Chicago police officers seeking overtime pay. In affirming the district court, the Seventh Circuit held that the CBA sufficiently protected the officers' right to overtime compensation. In this case, although the CBA is silent on the compensability of the fifteen-minute period, it provides corrections officers with the benefit of a partially-compensated mealtime and mandatory overtime pay if the mealtime is interrupted by work. As the Seventh Circuit stated, "[t]he FLSA requires no more."[10] The CBA, then, assumes "that generally an officer is not working during a meal period, but provides for appropriate compensation when an officer actually does work during the meal."[11]

---

[8] 994 F.2d at 335.
[9] 96 F.3d 228 (7th Cir. 1996).
[10] *Id.* at 232 (citing *Alexander*, 994 F.2d at 345 (Bauer, C.J., dissenting)).
[11] *Id.*

The Dissent argues that we have "disregard[ed] Supreme Court precedent," inappropriately focused on a "red herring" (the CBA), and relied upon a "factually inapposite and legally outdated" case in our "misguided approach" to this case. Dissenting Op. at 1, 7. In reality, our approach is consistent with the weight of precedent, considers the CBA as one relevant—though not dispositive—factor, and merely comes to a different conclusion regarding the predominant benefit of the corrections officers' uninterrupted mealtime period under the totality of the circumstances. Although we find the Seventh Circuit's analysis in *Leahy* useful for comparison, the Dissent is correct that the instant case is distinguishable, which is why, unlike the *Leahy* court, we do not hold that "the [collective bargaining] agreement is a *defense* to liability under the FLSA." *Leahy*, 96 F.3d at 232 (emphasis added). Nor have we "conflate[d] contractual rights with statutory ones." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 52 n.9 (1st Cir. 2013). Rather, we consider the agreed-upon characterization of the fifteen-minute unpaid meal break as a factor in analyzing to whom the predominant benefit of the period inures.

We have been advised at argument that the CBA is soon to expire. During the collective bargaining for the new contract, the parties will have a fresh opportunity to consider the issue of compensation for the fifteen minutes at issue in this case. It has been noted by the Supreme Court that employers and employees may make "reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 603 (1944), *superseded by statute on other*

10

*grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, codified at 29 U.S.C. §§ 251-262.

Although the District Court decided this case on the pleadings, there has been, unlike in *Alexander*, "sufficient development of the facts to enable a capable application of the appropriate predominant benefit standard, including a determination of whether the officers are unable to pass the mealtime comfortably because their time or attention is devoted primarily to official responsibilities." 994 F.2d at 339. Here, even accepting all of Plaintiffs' allegations as true, we do not find that the officers were "primarily engaged in work-related duties" during the daily, agreed-upon fifteen minutes of uninterrupted mealtime. *Armitage*, 982 F.2d at 432 (citing *Lamon v. City of Shawnee,* 972 F.2d 1145, 1157 (10th Cir. 1992)). As a result, we find that they receive the predominant benefit of the time in question and are not entitled to compensation for it under the FLSA.

For the foregoing reasons, we hold that Plaintiffs' claims under the predominant benefit test fail to state a claim upon which relief can be granted. We will accordingly affirm the District Court's order granting Butler County's motion to dismiss.

GREENAWAY, JR., *Circuit Judge*, dissenting.

Today the Majority holds that Plaintiffs' Fair Labor Standards Act ("FLSA") claims should be dismissed based upon a flawed application of the predominant benefit test. Specifically, the Majority erroneously concentrates on whether, under the parties' collective bargaining agreement ("CBA"), Plaintiffs are currently paid for a portion of their meal period. The Majority thereby disregards Supreme Court precedent on the definition of work. Indeed, Plaintiffs' current contractual compensation, upon which the Majority focuses, is a red herring that improperly detracts from the factual allegations in the Complaint.[1]

---

[1] As an initial matter, to the extent the Majority relies on CBA compensation provisions in its decision to dismiss Plaintiffs' Complaint, the Supreme Court has instructed that (1) the FLSA takes precedence over CBAs, and (2) a CBA standing alone may not control an FLSA claim. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981) ("[C]ongressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement."); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37 (1944) ("Whether [a meal period] falls within or without the [FLSA] is a question of fact [that] involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances."). The CBA simply does not govern statutory rights, nor can it preclude access to a federal forum. *Cf. Alexander v. City of Chi.*, 994 F.2d 333, 339 n.11 (7th Cir. 1993) ("[W]e are not persuaded by the

Plaintiffs[2] are corrections officers at the Butler County Correctional Facility who seek compensation for meal periods that they argue constitute compensable work under the FLSA. Although the Majority acknowledges the fact-intensive and circumstance-specific nature of the totality-of-the-circumstances inquiry under the predominant benefit test, *see* Majority Op. at 6, the Majority does not permit the Plaintiffs in this case to conduct the discovery that would permit them access to the facts and circumstances to meet that standard.

Rather, the Majority misconstrues the predominant benefit standard. Its decision to dismiss relies upon the facts that Plaintiffs may request authorization to leave the prison for their meal period, are compensated for the first forty-five minutes of their hour lunch period, and must be compensated

---

defendants' argument that the collective bargaining agreement between the City and its police officers obviates the officers' claim by confirming those parties' understanding that meal periods are not working time within the FLSA. Although a factfinder might consider such an agreement as one among many factors . . . it certainly does not outright preclude the officers' claim."). Furthermore, it is well settled—and Defendant concedes—that it is not possible to contract around federal law. *See* Appellee's Br. at 17.

[2] Plaintiff Sandra Babcock moved for conditional collective action certification of a class of similarly situated corrections officers, and over fifty other officers joined the proposed class. However, the District Court dismissed the action before reaching the collective certification motion.

if their meal period is "interrupted."[3]  *See* CBA, Article V, Section 5.1.D.1.  Further, the Majority discusses a Seventh Circuit decision, *Leahy v. City of Chicago*, 96 F.3d 228 (7th Cir. 1996), which is inapposite to the instant case, has been soundly rejected by the two circuits that have considered it, and has been called into question by subsequent Supreme Court precedent.[4]

The issue before us is not whether Plaintiffs are paid for the first forty-five minutes of their meal period and paid if called upon to work during their lunch hour.  Nor is the issue before us whether Plaintiffs may *request* permission to leave the prison.[5]  Instead, it is whether Plaintiffs should be paid because they allege that they are required to be prepared to

---

[3] *See* Majority Op. at 7 ("[T]he corrections officers here could request authorization to leave the prison for their meal period."); *id.* ("[The CBA] provides corrections officers with the benefit of a partially-compensated mealtime and mandatory overtime pay if the mealtime is interrupted by work.").

[4] *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 82 (1998); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 52 n.9 (1st Cir. 2013); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264 (5th Cir. 1998).

[5] That Plaintiffs may request permission to leave the prison during the lunch period should have no influence on the Court's decision.  There is nothing in the record establishing the frequency with which Plaintiffs are allowed to leave the prison.  This is precisely the type of fact-gathering that may be conducted during discovery.

serve at a moment's notice for the entirety of the meal period. As a result of maintaining this readiness to serve Defendant, Plaintiffs allege that they are subject to a number of restrictions and prohibitions that greatly limit their movement and activities. Considered in their totality, these restrictions create conditions constituting compensable work. As such, one can only conclude that the Complaint was improperly dismissed; I therefore respectfully dissent.

## I. Plaintiffs Raise a Plausible Claim that Uninterrupted Meal Periods Are Compensable Work.

In their Complaint, Plaintiffs allege that they must remain in uniform, in the prison, in close proximity to emergency response equipment, and on call to respond to emergencies, for the duration of their meal periods. App. 24, ¶ 27. They also allege that they are not permitted to go outside, sleep, smoke, or run personal errands during this time. *Id.* ¶¶ 30, 31, 32.

"The central issue in mealtime cases is whether employees are required to 'work' as that term is understood under the FLSA." *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) (citing *Henson v. Pulaski Cty. Sheriff Dep't*, 6 F.3d 531, 533–34 (8th Cir. 1993)). "[T]he [Supreme] Court [has] held that 'work' under the FLSA means 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). Indeed, "the Court counseled that the determination of what constitutes work is necessarily fact-bound." *Id.*

4

(citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore*, 323 U.S. at 136–37).

When courts evaluate which hours should be compensated as work, "the answer depends [in part] upon the degree to which the employee is free to engage in personal activities during periods of idleness." *Skidmore*, 323 U.S. at 138 (internal quotation marks omitted). The Supreme Court has further clarified:

> Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

*Armour*, 323 U.S. at 133.

Where employees have faced significant restrictions for the benefit of their employer, meal periods have been considered compensable work under the FLSA.

During such periods when "workers [were] restricted to the site for the purpose of performing valuable security service for the company," the Second Circuit found the meal period to be compensable as work. *Reich*, 121 F.3d at 65. Although observing that "the workers perform different services during meal breaks than throughout the rest of the day," the Second Circuit reasoned that "the workers' on-site presence [during meals] is solely for the benefit of the employer and, in their absence, the company would have to

5

pay others to perform those same services." *Id.* The court concluded, "[b]y not compensating these workers, [the employer] is effectively receiving free labor." *Id.*

Similarly, here, Plaintiffs have alleged that they are required to remain at the correctional facility during their meal period to be available to assist in security measures. Indeed, state regulations require certain staffing levels be maintained at correctional facilities at all times.[6] As in *Reich*, without Plaintiffs' presence at the facility during meals, Defendant could be required to hire others during that time period. Plaintiffs' allegations regarding the restrictions on their movement and activities are sufficient to state a claim under the FLSA that the meal period is compensable work.

The Majority distinguishes this case from *Alexander v. City of Chicago*—where the Seventh Circuit reversed the district court's entry of judgment on the pleadings—based on the fact that, there, "police officers were required to receive permission to take a meal period and were not permitted to read 'nondepartmental publications.'" Majority Op. at 7. Although the police officers in *Alexander* faced additional prohibitions relating to their personal behavior, they were subject to several of the same restrictions on activity and movement that Plaintiffs face here. There, during meal times the police officers: (1) had to remain within their assigned district; (2) had to remain in uniform; (3) could not nap or rest; and (4) were required to respond to emergencies and

---

[6] *See* 37 Pa. Code § 95.241. The specific standards set for the Butler County Correctional Facility are not in the record at this time; this is another type of fact-gathering that may be conducted during discovery.

6

requests for assistance from the public. 994 F.2d at 334–35. Here, Plaintiffs: (1) had to remain within the prison; (2) had to remain in uniform; (3) could not sleep; and (4) were required to respond to emergencies. App. 24, ¶¶ 27–34. As in *Alexander*, Plaintiffs are required to maintain a physical and mental readiness primarily for the benefit of their employer. Therefore, the Majority's reliance on *Alexander* to compel a different result here is misplaced.[7]

---

[7] Moreover, at oral argument, Plaintiffs represented that corrections officers face restrictions on reading materials—another similarity to *Alexander* which weakens the Majority's attempt to distinguish the case. This is a third example of an area in which factual development should have been allowed. Nevertheless, the Majority concludes that there has been "sufficient factual development of the facts to enable a capable application of the appropriate predominant benefit standard." Majority Op. at 9. Plaintiffs, however, are entitled to a correct application of the predominant benefit standard to an appropriately developed record. Even if the District Court had properly determined that the Complaint had been insufficiently pled, the dismissal still would have been improper. Rather, because amendment would not have been futile, Plaintiffs should have been given leave to amend. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint.") Indeed, "[i]t does not matter whether or not a plaintiff seeks leave to amend." *Id.* at 236.

## II. The Majority's Reliance on *Leahy* Is Factually and Legally Flawed.

The Majority also relies on *Leahy v. City of Chicago* to support its misguided approach in this case. *See* Majority Op. at 7. However, *Leahy* is both factually inapposite and legally outdated. In *Leahy*, the Seventh Circuit found that because "the collective bargaining agreement's guarantee of overtime compensation for time worked in excess of eight hours in an eight-and-one-half hour tour of duty protects Chicago police officers' FLSA rights to overtime compensation[,] . . . the agreement is a defense to liability under the FLSA and the plaintiffs' suit cannot succeed." 96 F.3d at 232. The instant case is factually dissimilar from *Leahy* because the CBA here *explicitly precludes* the arbitrator from making determinations concerning compliance with the FLSA.[8] Indeed, the arbitrator's ambit here was limited to the scope of the CBA, and the arbitrator did not reach the question of whether the FLSA had been violated.[9]

Further, *Leahy*'s holding is questionable post-*Wright* because *Wright* did not address whether the plaintiffs had exercised a "clear and unmistakable waiver" of their statutory right to a federal forum. *See Wright*, 525 U.S. at 81–82. Indeed, no court of appeals has followed *Leahy* in the

---

[8] *See* Arbitrator's Decision at 6, 7 ("Simply stated, the CBA does not authorize an arbitrator to resolve FLSA claims."; "I have not reviewed or considered the FLSA in rendering an Award, and I express no opinion regarding whether or not the FLSA has been violated.").

[9] *See id.* at 6.

nineteen years since it was issued.  Two of our sister circuits have addressed *Leahy*, and each has squarely rejected its holding.  The Fifth Circuit dismissed *Leahy*, noting,"[n]ot only is the majority position 'preposterous,' it completely ignores the Supreme Court's decision in *Barrentine*" because, "[u]nder *Barrentine*, [] the plaintiffs' right to pursue a suit under the FLSA is completely independent from their rights under the CBA."  *Bernard*, 154 F.3d at 263–64 (footnotes omitted) (quoting *Leahy*, 96 F.3d at 235) (Cudahy, J., dissenting).  The First Circuit also rejected the *Leahy* analysis, observing that it "conflates contractual rights with statutory ones."  *Manning*, 725 F.3d at 52 n.9.  Given the paucity of support for *Leahy* and the likelihood that its holding did not survive *Wright*, the Majority's reliance on *Leahy* to dismiss Plaintiffs' claims is mistaken.

## III.   Conclusion

In their Complaint, Plaintiffs set forth sufficient allegations to state a claim that their meal period should be considered compensable work under the FLSA.  For this reason alone, their claims should not have been dismissed.  Further, while discounting Plaintiffs' factual allegations, the Majority decides this matter by overvaluing the CBA's compensation provisions—disregarding relevant Supreme Court precedent in the process.  Ending this lawsuit now is clearly improper.  I respectfully dissent.